## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

|  |  |
|---|---|
| TIFFANY MARINA RODRIGUEZ<br><br><br>*Plaintiff*,<br>v.<br><br><br>OREN ALEXANDER; ALON ALEXANDER; SHLOMO ALEXANDER *A/K/A* SHLOMI ALEXANDER; ORLY ALEXANDER; HOWARD LORBER; MARRIOTT INTERNATIONAL, INC. AND/OR THE OWNER(S) AND OPERATOR(S) OF THE MIAMI BEACH EDITION; BASEMENT MIAMI; KENT SECURITY SERVICES; DOUGLAS ELLIMAN, INC.; AND DOUGLAS ELLIMAN REALTY, LLC.<br><br><br>*Defendants.* | COMPLAINT<br><br>JURY TRIAL DEMANDED |

Plaintiff Tiffany Rodriguez ("Plaintiff"), by and through her attorneys, The Bloom Firm,

brings this action against Oren Alexander ("Oren") and Alon Alexander ("Alon") (collectively,

the "Alexander Brothers"); as well as Shlomo Alexander, also known as Shlomi Alexander and

Orly Alexander (collectively, the "Alexander Parents"); Howard Lorber; Kent Security Services;

Marriott International, Inc. ("Marriott") and/or the owner(s) and operator(s) of The Miami Beach

EDITION and Basement Miami (collectively "Basement Miami Defendants"); Douglas Elliman,

Inc. and Douglas Elliman Realty, LLC (collectively "Douglas Elliman") (collectively, the

"Defendants"). Plaintiff alleges upon knowledge concerning her own experience and upon information and belief as to all other matters.

## NATURE OF THE ACTION

1.     The Alexander Brothers – Oren, Alon, and Tal Alexander – were once well-known and successful real estate agents and executives with ironclad connections to influential celebrities, businesses, and exclusive nightlife.

2.     Oren and Tal Alexander gained recognition in the luxury real estate market in both New York City and Miami as star brokers for Douglas Elliman, Inc. Alon Alexander served as an executive at their parents' security services company.[1] Together, the brothers became social fixtures, wielding power, money, and access through their connections in the high-end real estate scene.

3.     The Alexander Brothers cultivated a reputation for hosting high-profile parties, frequently using luxury real estate listings as venues to attract women. But the wealth, fame, and grandeur were all a ploy.

4.     Before their arrest in December 2024, the Alexander Brothers, now in their late 30s, sex trafficked, assaulted, battered, and raped dozens of women dating back to high school. They used their powerful and influential connections to celebrities, executives, and other prominent figures to traffic dozens of women for nearly a decade.

5.     The Alexander Brothers' sex trafficking ring was based in both New York City and Miami, also spanning Tel Aviv, Acapulco, Aspen, Las Vegas, the Hamptons, Tulum, and the Bahamas, specifically targeting women, including Plaintiff, based on their gender. The Alexander

---

[1] *More Women File Lawsuits Against Brothers Accused of Sex Crimes*
https://www.nytimes.com/2025/02/28/realestate/alexander-brothers-real-estate-lawsuits.html; *United States of America v. Alon Alexander, Oren Alexander, and Tal Alexander,* Superseding Indictment, Filed December 2024
https://www.justice.gov/d9/2024-12/u.s._v._alexander_et_al_superseding_indictment.pdf

Brothers, however, did not act alone. Instead, they used a network of entities and other individuals who helped facilitate, fund, and enable their sex trafficking scheme.[2]

6.      Their *modus operandi* was calculated and consistent: use their name, business affiliation, status, and wealth to gain notoriety and VIP access to clubs and social scenes; engage the clubs to work with them to help facilitate their scheme; utilize the funding they receive from various entities for which they were affiliated; hire paid agents to target and obtain vulnerable women; deploy intoxicants to impair resistance; transport or lure often unconscious women to a second location; and perpetrate sexual assaults in private spaces, including luxury apartments and high-end hospitality venues and nightclubs. Together, the brothers would forcibly rape, attack, assault, batter, and engage in other unlawful conduct against women while manipulating victims into silence.[3]

7.      Plaintiff's experience bears the same hallmarks: a staged encounter facilitated by a night club, funded by multiple entities and individuals, an intoxicant-laced drink, the presence and participation of multiple brothers, and an assault executed in a controlled environment that the Alexanders and their accomplices used to overwhelm and isolate their victims.

8.      As with other survivors who have come forward, Plaintiff's assault was not an outlier, but consistent with the Alexander Brothers' established pattern of targeting and exploiting victims in similar circumstances. It was the foreseeable product of a longstanding enterprise that Defendants refined over time – one that hospitality owners and operators, nightlife promoters,

---

[2] *United States of America v. Alon Alexander, Oren Alexander, and Tal Alexander,* Superseding Indictment, Filed December 2024, https://www.justice.gov/d9/2024-12/u.s._v._alexander_et_al_superseding_indictment.pdf; *Prosecutors add minor exploitation charge to Alexander bros sex trafficking case*, https://therealdeal.com/national/2025/11/24/prosecutors-add-minor-charge-in-alexander-bros-indictment/
[3] *Id.* see Superseding Indictment

business entities, and private security vendors were positioned to detect, deter, and report. But instead, they participated in, benefitted from, and funded the Alexander Brothers' scheme.

9.      Their decade-long sex trafficking ring only came to a halt once the brothers were indicted in December 2024 on federal sex trafficking charges in the Southern District of New York. When the criminal charges were announced, U.S. Attorney Damian Williams provided insight into the horrifying scope of the brothers' scheme: "[A]s alleged in the Indictment, for more than a decade, the Alexander Brothers, alone and together, repeatedly and violently sexually assaulted and raped dozens of female victims. Today, the defendants are charged with multiple sex trafficking offenses. Our investigation is far from over."[4]

10.      Following the indictment of the Alexander Brothers in New York, federal prosecutors announced plans to file additional charges, sharing that, at that point, over 60 of the Alexander Brothers' victims had already come forward, their claims strikingly similar to Plaintiff's, and so perverse that the judge denied the brothers' bail.[5]

11.      In the year since the filing of the initial indictment, federal prosecutors have filed an additional *three* superseding indictments against the Alexander Brothers with additional charges and victims, the most recent of which includes the sexual exploitation of a minor against Oren Alexander.[6]

---

[4] *Press Release: Alon, Oren and Tal Alexander Charged in Manhattan Federal Court With Sex Trafficking Offenses* https://www.justice.gov/usao-sdny/pr/alon-alexander-oren-alexander-and-tal-alexander-charged-manhattan-federal-court-sex
[5] Superseding Indictment, *supra* at footnote 2*;* United States Court of Appeals for the Second Circuit Summary Order Case No. 25-222 https://www.courthousenews.com/wp-content/uploads/2025/06/alexander-brothers-bail-denied-second-circuit.pdf; *Alexander brothers will face more charges as 60 women allege rape, prosecutors say*, https://www.cbsnews.com/newyork/news/alexander-brothers-will-face-more-charges/
[6] *United States of America v. Alon Alexander, Oren Alexander, and Tal Alexander,* Superseding Indictment, Filed May 2025, https://ecf.nysd.uscourts.gov/doc1/127137490492 ; *More charges expected in Alexander brothers' federal sex trafficking case*, https://therealdeal.com/new-york/2025/02/07/more-charges-expected-in-alexander-bros-sex-trafficking-case/; *The Alexanders prepare to go to trial*, https://therealdeal.com/magazine/december-2025/the-alexanders-on-trial/; *Prosecutors add minor exploitation charge to Alexander bros sex trafficking case*, *supra* at footnote 2

12.     The scope and coordination of this predatory venture have been extensively documented not only in the federal indictment and subsequent superseding indictment, but also throughout the various civil complaints filed against the Alexander Brothers in which women allege facts that mimic Plaintiff's: being drugged and violently sexually assaulted by two or more of the brothers acting in concert.[7]

13.     As stated in the June 30, 2024 complaint filed in New York State Supreme Court against Oren, Alon and, their brother, Tal Alexander, "[O]n June 8, 2024, news broke that twin brothers Oren Alexander ("Oren") and Alon Alexander ("Alon") had been sued by two different women alleging that they were raped by the brothers. Over the course of the following days, 30 additional women came forward and reported that they too had been raped by Oren or Alon, or both of them."[8]

14.     Plaintiff therefore brings this action against Defendants, as stated herein, for their role in enabling, facilitating, and/or participating in the Alexander Brothers' sex trafficking ring that empowered the savage drugging and rape of Plaintiff, and other women, at the hands of these men.

## **PARTIES**

15.     Plaintiff, Tiffany Marina Rodriguez, at all relevant times, resided in Miami Beach, Florida. Plaintiff was sex trafficked by the Alexander Brothers in September 2016 in Miami Beach, Florida. That same night, Plaintiff was transported to Sunny Isles Beach, Florida, where she was sexually assaulted by the Alexander Brothers at Oren Alexander's condo.

---

[7] Superseding Indictment, *supra* at footnote 2; *Angelica Parker v. Tal Alexander, Alon Alexander, and Oren Alexander*, Supreme Court of the State of New York, County of New York, Filed June 18, 2024, Index No. 155547/2024; *Jane Doe 1 v. Alon Alexander, Oren Alexander, and Tal Alexander*, Supreme Court of the State of New York, County of New York, Filed February 25, 2025, Index No. 152605/2025; *Milena Koste, et al. v. Tal Alexander, Oren Alexander, Alon Alexander, et al.*, Supreme Court of the State of New York, County of New York, Filed May 21, 2025, Index No. 152560/2025.
[8] *Angelica Parker v. Tal Alexander, Alon Alexander, and Oren Alexander*, *supra* at footnote 7

16.     Upon information and belief, Defendant Oren Alexander, at all relevant times, resided in Sunny Isles Beach, Florida. Defendant Oren Alexander currently resides within Metropolitan Detention Center in Brooklyn, New York, awaiting trial on sex trafficking and other charges. Defendant Oren Alexander committed, directed, participated in, and/or conspired in the commission of the sex trafficking and sexual assault of Plaintiff.

17.      Upon information and belief, Defendant Alon Alexander, at all relevant times, resided in Miami Beach, Florida. Defendant Alon Alexander currently resides within Metropolitan Detention Center in Brooklyn, New York, awaiting trial on sex trafficking and other charges. Defendant Alon Alexander committed, directed, participated in, and/or conspired in the commission of the sex trafficking and sexual assault of Plaintiff. Oren Alexander and Alon Alexander are hereinafter referred to collectively as the "Alexander Brothers".

18.     Upon information and belief, Defendant Shlomo Alexander, also known as Shlomi Alexander, at all relevant times, resided in Bal Harbour, Florida. Defendant Shlomo Alexander knowingly provided money and resources to the Alexander Brothers to enable their sex trafficking and sexual assault of women, including Plaintiff.

19.     Upon information and belief, Defendant Orly Alexander, at all relevant times, resided in Bal Harbour, Florida. Defendant Orly Alexander knowingly provided money and resources to the Alexander Brothers to enable their sex trafficking and sexual assault of women, including Plaintiff.

20.     Defendants Shlomo and Orly Alexander knowingly directed, enabled, participated in, benefitted from, and/or conspired with the Alexander Brothers in the commission of the crimes against Plaintiff and other women.

21.     Upon information and belief, Defendant Howard Lorber, at all relevant times, resided in Southampton, New York. Defendant Howard Lorber knowingly provided money, resources, and a corporate cover to the Alexander Brothers to enable their sex trafficking and sexual assault of women, including Plaintiff.

22.     Defendant Howard Lorber knowingly directed, enabled, participated in, and/or conspired with the Alexander Brothers in the commission of the crimes against Plaintiff and other women.

23.     Upon information and belief, Defendant Marriott International, Inc., at all relevant times, had its principal place of business in Bethesda, Maryland. Defendant Marriott International, Inc. maintains several offices in Miami, Florida. Defendant Marriott International, Inc. is a global hospitality company that operates, manages, controls, and/or profits from hotel properties under the "EDITION" brand.

24.     Upon information and belief, Defendant Marriott International, Inc. owns, operates, manages, controls, and/or profits from The Miami Beach EDITION and consequently Basement Miami nightclub located within The Miami Beach EDITION.

25.     Upon information and belief, Defendant The Miami Beach EDITION, at all relevant times, was located in Miami Beach, Florida. It is a hotel that operates as part of the "EDITION" hotel brand.

26.     The Miami Beach EDITION hotel complex includes, among other facilities, an underground nightclub and entertainment venue (known as "Basement") – the same location where Plaintiff was recruited, drugged, and later trafficked.

27.     Upon information and belief, Defendant Basement Miami, at all relevant times, was located in Miami Beach, Florida. It is a nightclub located within The Miami Beach EDITION.

28.     Defendants Marriott International, Inc., The Miami Beach EDITION, and Basement Miami (hereinafter collectively "Basement Miami Defendants"), knowingly benefited from, and participated in, a venture that they knew, should have known, or were in reckless disregard of the fact that Plaintiff would be forced to engage in commercial sex acts by force, fraud, or coercion, as alleged herein.

29.     The Basement Miami Defendants knowingly directed, enabled, participated in, and/or conspired with the Alexander Brothers in the commission of the crimes against Plaintiff and other women.

30.     Upon information and belief, Defendant Kent Security Services, at all relevant times, had its principal place of business in Miami Beach, Florida.

31.     Defendant Kent Security Services knowingly directed, enabled, participated in, and/or conspired with the Alexander Brothers in the commission of the crimes against Plaintiff and other women.

32.     Upon information and belief, since 1982, Defendant Orly Alexander was the Chief Financial Officer and Defendant Shlomo Alexander was the Chairman of the Board of Kent Security Services. When Defendants Orly and Shlomo Alexander were executives at Kent Security Services, they had knowledge of Defendant Alon Alexander's propensity to sexually abuse women.

33.     Defendant Alon Alexander, at all relevant times, was an agent, servant, and/or employee of Defendant Kent Security Services, providing him with access to telephones,

computers, offices, and corporate events, which he used to recruit, contact, and arrange meetings with women who were then intoxicated and/or drugged and assaulted.

34.     Defendant Alon Alexander, at all relevant times, used his position at Kent Security Services to lure women to traffic, sexually assault, batter, drug, and rape, including Plaintiff. Defendant Kent Security Services had notice of this conduct yet continued to fund and participate in the sex trafficking scheme.

35.     Upon information and belief, Defendant Douglas Elliman, Inc., at all relevant times, had its principal place of business in New York, New York.

36.     Upon information and belief, Defendant Douglas Elliman Realty, LLC, at all relevant times, had its principal place of business in New York, New York.

37.     Defendants Douglas Elliman, Inc. and Douglas Elliman Realty, LLC (hereinafter collectively "Douglas Elliman") knowingly directed, enabled, participated in, and/or conspired with the Alexander Brothers in the commission of the crimes against Plaintiff and other women.

38.     Defendant Oren Alexander, at all relevant times, was an agent, servant, and/or employee of Defendants Douglas Elliman, Inc. and Douglas Elliman Realty, LLC.

39.     Defendant Oren Alexander used company prestige, events, ultra-luxury real estate listings, and communications systems, including company-issued cell phones, to target women, including by contacting them through dating apps and inviting them to company-linked parties where victims were supplied with alcohol and/or drugs before being assaulted.

40.     Defendant Oren Alexander, at all relevant times, used his position at Douglas Elliman, Inc. and Douglas Elliman Realty, LLC to lure women to traffic, sexually assault, batter, drug, and rape, including Plaintiff. Defendants Douglas Elliman, Inc. and Douglas Elliman

Realty, LLC had notice of this conduct yet failed to supervise, discipline, or terminate Defendant Oren Alexander.

41.     Defendant Howard Lorber, at all relevant times, was the CEO and Chairman of Douglas Elliman, LLC. Through his position, Defendant Howard Lorber, and other senior leadership, had knowledge of Oren Alexander's propensity to sexually abuse women but continued to fund, facilitate, and promote the sex trafficking scheme.

## JURISDICTION AND VENUE

42.     This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343, as this article asserts violations of 18 U.S.C. §§ 1591 *et seq.* and 1595 *et seq.*, and therefore raises federal questions regarding the deprivation of Plaintiff's rights. This Court has supplemental jurisdiction over Plaintiff's related claims arising under state law pursuant to 28 U.S.C. § 1367(a).

43.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to this action occurred in this District, and Defendants Oren Alexander, Alon Alexander, Shlomo Alexander, Orly Alexander, Marriott International, Inc., The Miami Beach EDITION, Basement Miami, and Kent Security Services conduct substantial business and/or are domiciled in this District.

## FACTUAL ALLEGATIONS

44.     On September 26, 2016, Plaintiff went to Basement Miami, a nightclub venue operated within The Miami Beach EDITION hotel, with a friend (hereinafter "Friend A").

45.     Prior to that night, a promoter employed by the Basement Miami Defendants, and an acquaintance of Friend A (hereinafter "Promoter 1") contacted Friend A and encouraged her to come to the club that evening to "hang out" with the Alexander Brothers. In response to Promoter 1's outreach, Plaintiff and Friend A went to Basement Miami as requested.

46.     Upon arrival at Basement Miami that night, Plaintiff and Friend A were escorted to a private table by another promoter employed by the Basement Miami Defendants (hereinafter "Promoter 2"). There, after escorting Plaintiff and Friend A, Promoter 2 remained at the table along with the two women and the Alexander Brothers, making drinks and handing them to Plaintiff.

47.     Plaintiff consumed fewer than two drinks before feeling severely unwell and struggling to stay awake at the nightclub. Given the few drinks she had, Plaintiff knew this feeling was unusual and recognized that she had been drugged. Plaintiff has no recollection of further events at Basement Miami that evening, and only fragmented memories of what followed.

48.     Plaintiff was transported from the nightclub in an SUV, seated in the backseat alongside Friend A and Promoter 2. In the front seats driving the vehicle were Defendants Oren and Alon Alexander, two individuals later civilly and criminally charged with sex trafficking, among other charges.

49.     Plaintiff remained largely unconscious, intermittently waking outside of a sandwich shop near her residence at the Flamingo complex in Miami Beach. She pleaded to go home, but the group ignored her cries. Upon information and belief, Defendant Oren Alexander handed Plaintiff a sandwich. She then slipped back out of consciousness.

50.     When she briefly awoke next, Plaintiff was at a luxury condo in Sunny Isles Beach, owned by Defendant Oren Alexander. Plaintiff entered the condo and collapsed on a couch, again losing consciousness.

51.     When Plaintiff fully regained consciousness, she found herself in a bedroom, severely physically restrained. Her body was pinned beneath the arms of a horizontally positioned office chair, with her head and legs forced through the chair's frame.

52.     Plaintiff was being raped by both Defendants Oren and Alon Alexander simultaneously.

53.     The Alexander Brothers took turns. While one brother brutally raped Plaintiff, the other filmed it on his cell phone and forced Plaintiff to perform oral sex. Then they switched and resumed the group rape. The Alexander Brothers eventually dismissed Plaintiff without another word.

54.     As soon as she was permitted to leave, Plaintiff immediately fled from the bedroom, looking for someone to help and take her to safety. Instead, what she found was Friend A and Promoter 2 outside on the condo's balcony, their backs turned to her, and within earshot.

55.     Plaintiff pleaded with Friend A to leave, and on the drive home, she disclosed that she had been raped by the Alexander Brothers.

56.     Upon returning to her apartment, which she shared with her then-boyfriend, Plaintiff recounted the horrific assault to him and their friend (hereinafter "Friend K"). The next day, her boyfriend and Friend K were unable to wake her for several hours. When she finally regained consciousness, they told her they had nearly called 911 because they believed she had been drugged.

57.     Later that evening, her boyfriend forced her to leave their home after receiving a video depicting her being sexually assaulted by the Alexander Brothers – consistent with the

brothers' pattern of recording the assaults and circulating the footage as a form or coercion and control.[9]

58.     The following day, Friend A confronted Promoter 1, asserting that he knowingly placed her and Plaintiff in danger by connecting them with Promoter 2, who was affiliated with the Alexander Brothers. During this exchange, Friend A identified the specific condominium location where the incident occurred. Promoter 1 acknowledged that it belonged to Oren Alexander.

59.     Following the confrontation, Promoter 1 contacted an associate of Oren Alexander and reported that Plaintiff had been raped at Oren's residence, emphasizing the need for the situation to be handled appropriately. Shortly thereafter, Plaintiff was contacted by a private investigator acting on behalf of Oren, who conveyed a threatening and coercive message: the Alexander Brothers asserted that the sexual acts were consensual and that Plaintiff's credibility would be attacked. The investigator referenced Plaintiff's personal history intending to discourage her from reporting the assault. As a result, Plaintiff experienced profound fear, shame, and isolation, reasonably believing that coming forward would subject her to retaliation, public humiliation, and disbelief. Under these circumstances, Plaintiff did not feel safe reporting the rape and remained silent for years.

60.     It was not until December 2024, when she learned of the Alexanders' arrests for sex trafficking, that she felt safe enough to come forward. It was at this time that Plaintiff discovered the breadth of the Alexander Brothers' scheme, previously unaware that she was not the only one.

---

[9] *Alexanders prepare to go to trial*, *supra* at footnote 5

61.     The Miami Beach EDITION and its nightclub venue, Basement Miami, were among the luxury settings used to cultivate the Alexander Brothers' image of lavishness, wealth, and exclusivity, hosting events that facilitated access to victims, supplying women with alcohol and/or drugs who were subsequently assaulted.

62.     The Basement Miami Defendants were well aware that this sex trafficking scheme was taking place at the club. In fact, a former VIP Director who worked at Basement Miami reported to her manager on multiple occasions between 2014 and 2016 that she received numerous complaints about the Alexander Brothers. She reported that at least four women on three separate occasions reported to her that they had been drugged by the Alexander Brothers at Basement Miami and then raped by the Alexander Brothers shortly after visiting Basement Miami. All these women spent time in the VIP area at the nightclub, at the Alexander Brothers' table, on the night of their assaults. As such, at all relevant times, the VIP Director and management of Basement Miami Defendants were aware of the sex trafficking scheme engaged by the Alexander Brothers, and instead of stopping it, chose to participate and facilitate.

I.   **Sex Trafficking Scheme Orchestrated by the Alexander Brothers and the Basement Miami Defendants**

63.     The sex trafficking scheme orchestrated by the Alexander Brothers and the Basement Miami Defendants went as follows:

A. The Alexander Brothers would regularly spend significant sums of money at Basement Miami by paying for premium tables and bottle service. These purchases generated substantial revenue for the Basement Miami Defendants, benefitting them greatly given that their business model and a substantial portion of their income relied heavily on high-profile guests making large discretionary purchases on such things as luxury tables and bottle service.

B. In exchange for the Alexander Brothers' substantial spending at the club, the Basement Miami Defendants helped the Alexander Brothers carry out their scheme by directing employees and agents to escort targeted women to the Alexander Brothers' table, described as the "best looking" and "most intoxicated," where they were subsequently raped.

C. The employees and agents would do just that. They would bring unsuspecting women to the Alexander Brothers' table. Once at the table, the Alexander Brothers would often drug them.

D. After the Basement Miami Defendants worked together to lure and intoxicate women for the Alexander Brothers, the Basement Miami Defendants further assisted by transporting the intoxicated, and often unconscious women, by driving and/or accompanying them, along with the Alexander Brothers, to the next location where the group rapes occurred.

E. Often, the employees and agents of Basement Miami remained at the residence where the rape occurred after transporting the victims there.

F. This cycle continued for years, despite the Basement Miami Defendants' knowledge of and participation in the exact conduct they were facilitating.

G. Plaintiff was a victim of this very scheme on September 26, 2016.

64.    The former VIP Director observed unconscious women routinely being carried from the nightclub by Basement Miami's security. Management was aware of these patterns long before September 26, 2016, yet continued to facilitate the scheme.

65.     Defendant Marriott International, Inc. is a global hospitality company that operates and manages hotel properties under the "EDITION" brand. At all relevant times, Marriott operated The Miami Beach EDITION, and thus Basement Miami.

66.     Although Marriott sold the underlying real estate, pursuant to a transaction completed February 19, 2015, Marriott retained a long-term management agreement under which it continues to operate and control the hotel.[10]

67.     Under the retained management agreement, Marriott is responsible for the day-to-day operation, staffing, security, policies, and supervision of The Miami Beach EDITION and its venues. Therefore, Marriott had authority and control over the conditions of the premises, including security and protection of guests and patrons, like Plaintiff.[11]

## II.     Sex Trafficking Scheme Orchestrated by the Alexander Brothers, the Alexander Parents, and Kent Security Services

68.     The Alexander Brothers' sex trafficking operation was enabled and funded by substantial financial and other resources they received from the Alexander Parents, and their company, Kent Security Services. At the start of the operation, the brothers were not independently wealthy and instead relied on their parents, and consequently their parents' company, to provide the money and resources for their scheme.

69.     The Alexander Parents, and their company, Kent Security Services, knew that the Alexander Brothers were sexually abusing, assaulting, battering, drugging, raping and/or trafficking women. They did nothing to stop it and instead chose to fund it. As early as 2003, when Oren and Alon Alexander were still in high school, the brothers were accused of raping a fourteen-year-old girl who had been supplied with alcohol and drugs and subsequently lost

---

[10] *Marriott Sells Miami Beach EDITION, Retains Long-term Management* https://marriott.gcs-web.com/news-releases/news-release-details/marriott-sells-miami-beach-edition-retains-long-term-management
[11] *Id.*

consciousness. The Alexander Parents personally accompanied their sons to the police station in connection with that incident, confirming that they were fully aware of their sons' behavior and their propensity to sexually assault women.[12]

70.     Further, the Alexander Brothers openly bragged about acting in concert with others to sexually assault women, referring to such attacks as "running trains," a term Oren Alexander echoed in his high school yearbook, where he listed his favorite memory as "Riding my first choo-choo train."[13]

71.     Moreover, in a separate lawsuit filed against the Alexander Brothers, one of the plaintiffs in that suit alleged in her complaint that she had knowledge that, after Oren Alexander sexually assaulted a woman who became pregnant, Defendants Shlomo and Orly Alexander threatened and pressured her to have an abortion.[14]

72.     The Alexander Parents knowingly funded the Alexander Brothers by providing them with money and other resources that were then used to commit sexual violence against numerous women. Defendants' encouragement and acceptance of this conduct was ratified by their continued employment of their son, Defendant Alon Alexander, who was an executive at Kent Security Services.[15]

73.     As the Alexander Parents owned, operated, and/or controlled Kent Security Services, Defendants and their company had a duty to stop Defendant Alon Alexander, an employee of their company, from perpetuating sexual violence. Defendants had knowledge that Alon Alexander, a company executive, was using money and resources he received from Kent

---

[12] *Milena Koste, et al. v. Tal Alexander, Oren Alexander, and Alon Alexander, et al.*, *supra* at footnote 7; *The Alexander Twins Were Accused of Gang Rape Back in 2003*, https://www.miaminewtimes.com/news/alon-and-oren-alexander-were-accused-of-miami-gang-rape-back-in-2003-22048049/
[13] *Alexander Twins Were Accused of Gang Rape Back in 2003, supra* at footnote 12
[14] *Milena Koste, et al. v. Tal Alexander, Oren Alexander, and Alon Alexander, et al.*, *supra* at footnote 7
[15] *More Women File Lawsuits Against Brothers Accused of Sex Crimes*, *supra* at footnote 1

Security to engage in sexual misconduct, including drugging, assaulting, and sexually abusing women, yet they continued to fund it. Kent Security Services failed to monitor, discipline, or terminate him.

74.     Kent Security Services employed Alon Alexander and provided him with access to telephones, computers, offices, and corporate events, which he used to recruit, contact, and arrange meetings with women who were then intoxicated and/or drugged and assaulted. Kent Security's failure to supervise or intervene foreseeably enabled these harms, therefore paving the way for Plaintiff's assault.

75.     By allowing Defendant Alon Alexander to use his position and funding at Kent Security Services to facilitate sexual assault and trafficking, Defendants Shlomo and Orly Alexander and Kent Security Services created and maintained the conditions that enabled this criminal behavior and foreseeably caused injury to Plaintiff.

76.     The Alexander Parents, and by proxy Defendant Kent Security Services, knowingly benefitted financially and reputationally from maintaining Defendant Alon Alexander as an executive, despite their awareness of his propensity for sexual violence. Defendant Alon Alexander maintained a close relationship and association with his brothers, Oren and Tal, who were in the ultra-luxury real estate market, socializing with wealthy, influential and high-profile individuals. The brothers' relationship enhanced Kent Security Services' visibility, prestige, and access to elite client networks. Defendant Alon Alexanders' presence within those circles conferred tangible business advantages on Kent Security Services, including increased credibility, contacts, and revenue opportunities from those connections.

77.     By retaining Defendant Alon Alexander in an executive role and continuing to provide him with financial compensation and corporate resources, the Alexander Parents and

Kent Security Services knowingly accepted the benefits of his connections while disregarding and/or consciously ignoring their knowledge that those same resources were being used to facilitate a sex trafficking scheme. This knowing acceptance of financial and reputational benefits constitutes a participation in, and benefit from, the sex trafficking venture that foreseeably resulted in Plaintiff's assault.

78.     Defendant Kent Security Services' continued payment of Alon Alexander's salary and providing him with corporate resources allowed him to operate, along with his brothers, with institutional legitimacy and financial security. As such, this reinforced the Alexander Brothers' ability to cultivate high-end social environments, recruit women, and move them between locations with impunity. Plaintiff's assault occurred within the very framework that Defendants knowingly sustained and profited from.

79.     Accordingly, Plaintiff's injuries were not isolated or unforeseeable. They were the natural and foreseeable consequence of the Alexander Parents and Kent Security Services' knowing participation in, and benefit from, the Alexander Brothers' sex trafficking venture.

### III.     The Sex Trafficking Scheme Orchestrated by the Alexander Brothers, Howard Lorber, and Douglas Elliman

80.     Between approximately 2010 and 2022, Defendant Oren Alexander was employed by Douglas Elliman Inc. and Douglas Elliman Realty LLC, under the direction and control of Howard Lorber, the companies' Chairman and Chief Executive Officer.[16]

81.     During this time, Defendants Douglas Elliman and Howard Lorber knew that Oren Alexander was engaging in sexual abuse, trafficking, and assault while exploiting his

---

[16] *Alexander brothers' parents and former employers accused in new lawsuit,* https://www.miamiherald.com/news/local/crime/article301185659.html; *Facing heat, Douglas Elliman CEO Howard Lorber is retiring*, https://www.housingwire.com/articles/facing-heat-douglas-elliman-ceo-howard-lorber-is-retiring/

professional positions and the prestige of the Elliman brand. In fact, Douglas Elliman and Lorber were on notice of Oren Alexander's propensity for sexual violence following a 2010 report by a Douglas Elliman agent who was sexually assaulted by all three Alexander Brothers. The agent was discovered on the street, covered in vomit, after being sexually assaulted by the brothers. In 2012, another agent reported to Howard Lorber that she had been sexually assaulted by the Alexanders. In 2014, a *third* Douglas Elliman agent was found unconscious after being handed a drink by Oren Alexander.[17]

82.     Five real estate professionals reported that they either had personally told executives at Douglas Elliman about assaults by the Alexander Brothers or had been told about said assaults by company executives. Despite this, Douglas Elliman continued to employ and support the Alexander Brothers, failing to take corrective action. Instead, the company continued to fund, promote, and celebrate the Alexander Brothers, rewarding them with professional advancement and public recognition. Lorber himself attended Oren and Alon Alexander's 27th birthday celebration and publicly praised them as "two incredible young men" who he was "proud to be associated with," signaling institutional approval and reinforcing a workplace culture that tolerated and encouraged their sex trafficking scheme.[18]

83.     Douglas Elliman benefited financially from the Alexander Brothers' business success and notoriety in the industry. Oren Alexander was a notable and successful realtor with connections in elite social circles. Keping him happy at Douglas Elliman was of great financial and reputational gain to the company.

---

[17] *Milena Koste, et al. v. Tal Alexander, Oren Alexander, and Alon Alexander, et al.*, *supra* at footnote 7
[18] *Oren and Alon Alexander celebrate their 27th birthday party @ Beautique NYC* https://youtu.be/CAUzal89hKg?si=TSh6TgbwGs-C8a4Z.

84.     In exchange for this benefit to the company, Douglas Elliman continued to fund the sex trafficking scheme, continuing to promote Oren Alexander so he became more notable having more access to more potential victims. Douglas Elliman knew that a substantial portion of the money paid to Oren Alexander was being used to sexually traffic and abuse women.

85.     Defendant Oren Alexander used Douglas Elliman's corporate resources, including company phones, computers, business events, and the company name in the luxury real estate market to communicate with potential victims, organize lavish parties, and plan sexual encounters. The company was aware that these resources were being used to sexually assault and traffic women and directly facilitated the Alexander Brothers' trafficking scheme, thus contributing to Plaintiff's injuries.

86.     By retaining Defendant Oren Alexander as an ultra-luxury real estate agent and continuing to provide him with financial compensation and corporate resources, Howard Lorber and Douglas Elliman knowingly accepted the benefits of the connections he made and revenue he generated while disregarding and/or consciously ignoring the substantial risk that those same resources were being used to facilitate a sex trafficking scheme. This knowing acceptance of financial and reputational benefits constitutes a participation in, and benefit from, the sex trafficking venture that foreseeably resulted in Plaintiff's assault.

87.     Defendants Howard Lorber and Douglas Elliman's continued payment of Oren Alexander's salary and providing him with corporate resources allowed him to operate, along with his brothers, with institutional legitimacy and financial security. As such, this reinforced the Alexander Brothers' ability to cultivate high-end social environments, recruit women, and move them between locations with impunity. Plaintiff's assault occurred within the very framework that Defendants knowingly sustained and profited from.

88.      By allowing Defendant Oren Alexander to use his position, status, and access at Douglas Elliman to facilitate sexual assault and trafficking, Douglas Elliman created and maintained the conditions that enabled this criminal behavior and foreseeably caused injury to Plaintiff.

89.      Accordingly, Plaintiff's injuries were not isolated or unforeseeable. They were the natural and foreseeable consequence of Howard Lorber and Douglas Elliman's knowing participation in, and benefit from, the Alexander Brothers' sex trafficking venture.

## DAMAGES

90.      As a result of the assault, Plaintiff was hospitalized for three days. She required surgery after seeking medical attention due to an infection stemming from a torn nipple piercing inflicted during the sexual assault.

91.      The psychological toll the sexual assault took on Plaintiff has been catastrophic. Plaintiff attempted suicide in the months following the assault and began self-medicating.

92.      Plaintiff suffers from chronic Post-Traumatic Stress Disorder, experiences regular flashbacks, and struggles with depression, anxiety, dissociation, and trust issues. Plaintiff's ability to form and maintain relationships has been severely compromised.

93.      As a result of the acts and conduct complained herein, Plaintiff has suffered, and will continue to suffer, emotional pain, suffering, inconvenience, loss of enjoyment of life, depression, anxiety, paranoia, and other non-pecuniary losses entitling her to an award of compensatory and punitive damages, injunctive and declaratory relief, attorney's fees and costs, and other remedies as this Court may deem appropriate.

**FIRST CAUSE OF ACTION**
**Sex Trafficking under 18 U.S.C. § 1591**
*Against Alon and Oren Alexander*

94.     Plaintiff repeats and realleges each and every allegation contained in all of the preceding paragraphs as if fully set forth herein.

95.     Defendants Oren and Alon Alexander, twin real estate executives, leveraged their name, status, and money to run a sex trafficking ring across luxury venues in both New York City and Miami. Specifically, at The Miami Beach EDITION and its Basement Miami nightclub, the Alexander Brothers lured young women to sexually abuse, assault, batter, drug, and rape them, which was enabled, facilitated, and/or participated in by the other defendants. The Alexander Brothers' *modus operandi* was to use their fame and wealth to gain VIP access to clubs and social scenes; the Alexander Brothers would pay large sums of money to the venue for bottle service and VIP treatment. In exchange, the venue provided them with the use of agents to target and obtain vulnerable women. In conjunction with the agents, the Alexander Brothers would deploy intoxicants to impair resistance, transport or lure unconscious women to another location, and perpetrate sexual assaults while manipulating the victims into silence.

96.     The Alexander Brothers and the Basement Miami Defendants recruited and enticed Plaintiff by engaging a Basement Miami promoter (paid by Basement Miami Defendants) to persuade Plaintiff to go to the nightclub, and then a second Basement Miami promoter (paid by Basement Miami Defendants) brought her directly to the Alexander Brothers VIP table, provided her with an intoxicant-laced drink and transported Plaintiff with the Alexander Brothers to their condo in Sunny Isles, Florida while she was unconscious. Plaintiff was restrained and sexually assaulted at the hands of Oren and Alon Alexander, while Basement Miami's promoter waited outside the room, ignoring her cries for help.

97.     Through an established pattern, the Alexander Brothers coerced, recruited, and/or enticed Plaintiff to engage in and/or submit to commercial sex acts, as defined by 18 U.S.C. § 1591(e)(3).

98.     The Alexander Brothers used fraud and force to coerce and entice Plaintiff into commercial sex acts. The Alexander Brothers did so by paying nightclubs to use nightclub promoters to provide Plaintiff with intoxicant-laced drinks while at Basement Miami, causing Plaintiff to lose consciousness. The Alexander Brothers then transported Plaintiff to their condo in Miami. When Plaintiff regained consciousness, she was restrained under the legs of a chair while the Alexander Brothers forcibly performed sexual acts on her.

99.     As a direct and proximate result of the Alexander Brothers' actions, Plaintiff has sustained, and will continue to sustain, monetary damages and/or economic harm, physical injury, pain and suffering, and serious psychological and emotional distress.

100.    Defendants Alon and Oren Alexander used a private investigator and threats about Plaintiff's past to coerce Plaintiff into remaining silent, preventing Plaintiff from asserting her rights within the statutorily prescribed period. Defendants should be estopped from asserting the statute of limitations as a defense due to the duress exerted upon Plaintiff.

### SECOND CAUSE OF ACTION
### Sex Trafficking under 18 U.S.C. § 1591
### *Against Basement Miami Defendants (Marriott International, Inc., The Miami Beach EDITION, and Basement Miami)*

101.    Plaintiff repeats and realleges each and every allegation contained in all of the preceding paragraphs as if fully set forth herein.

102.    Basement Miami Defendants directed, enabled, participated in, and knew that the Alexander Brothers were sex trafficking women, and advanced or profited from their sex trafficking of women. Basement Miami Defendants provided benefits, goods, services, and/or

promises of same which were then used to lure women into this sex trafficking ring, in violation of 18 U.S.C. § 1591(a)(2), reaping a benefit in return.

103.    Basement Miami Defendants participated in the venture by repeatedly (1) permitting the Alexander Brothers to return to the nightclub despite multiple reports that the brothers were sexually assaulting and raping women they recruited on the premises. Basement Miami Defendants continued to reserve VIP tables in the Alexander Brothers' name and directed their promoters to recruit women to those tables even after receiving these reports.

104.    Basement Miami Defendants not only permitted the brothers to continue to use their venue to carry out their forced sex trafficking scheme, but actually participated in the sex trafficking scheme by having Basement Miami Defendant employees recruit and entice women to join the Alexander Brothers VIP table where Basement Miami Defendants knew they would be fraudulently induced into forced sex. Basement Miami Defendants knowingly and intentionally benefited financially from their participation in the sex-trafficking venture. The Alexander Brothers would regularly spend significant sums of money at Basement Miami by paying for premium tables and bottle service. These purchases generated substantial revenue for the Basement Miami Defendants, benefitting them greatly given that their business model and a substantial portion of their income relied heavily on high-profile guests making large discretionary purchases on such things as luxury tables and bottle service. In exchange for these large sums of money, the Basement Miami Defendants help facilitate the forced sex of vulnerable women.

105.    Basement Miami Defendants knew that the money spent by the Alexander Brothers at Basement Miami, that Basement Miami Defendant's financially benefitted from, would be used to wrangle Basement Miami promoters, gain VIP access, reserve luxury tables,

and provide alcohol to entice and recruit Plaintiff to then force her to engage in commercial sex

acts, as defined by 18 U.S.C. § 1591(e)(3).

106.    As a direct and proximate result of the Basement Miami Defendants' actions,

Plaintiff has sustained, and will continue to sustain, monetary damages and/or economic harm,

physical injury, pain and suffering, and serious psychological and emotional distress.

### THIRD CAUSE OF ACTION
### Sex Trafficking under 18 U.S.C. § 1591
*Against the Alexander Parents (Shlomo Alexander and Orly Alexander) and Kent Security Services*

107.    Plaintiff repeats and realleges each and every allegation contained in all of the

preceding paragraphs as if fully set forth herein.

108.    The Alexander Parents and Kent Security Services directed, enabled, participated

in, and/or knew or should have known that the Alexander Brothers were sex trafficking women,

and advanced or profited from their sex trafficking of women. The Alexander Parents and Kent

Security Services provided benefits, goods, services, and/or promises of the same, which were

then used to lure women into this sex trafficking ring, in violation of 18 U.S.C. § 1591(a)(2),

reaping a benefit in return.

109.    The Alexander Parents, and consequently Kent Security Services, participated in

the venture by continuing to employ Defendant Alon Alexander despite reports dating back to

high school that he, along with his brothers, were sexually assaulting and raping women. Despite

numerous reports over the years, the Alexander Parents employed Defendant Alon Alexander at

Kent Security Services, providing him with financial resources in the form of an executive level

salary, which Defendant Alon Alexander then used to contact, recruit, and entice women by

virtue of his wealth and social status, something he gained as a result of his employment at Kent

Security Services.

110.    The Alexander Parents and Kent Security Services knowingly and intentionally benefited financially from their participation in the sex-trafficking venture. Defendant Alon Alexander maintained a close relationship and association with his brothers, Oren and Tal, who were in the ultra-luxury real estate market, socializing with wealthy, influential, and high-profile individuals. The brothers' relationship enhanced Kent Security Services' visibility, prestige, and access to elite client networks. Defendant Alon Alexanders' presence within those circles conferred tangible business advantages on Kent Security Services, including increased credibility, contacts, and revenue opportunities from those connections. The Alexander Parents, as owners and operators of Kent Security Services, benefited from this exposure.

111.    By retaining Defendant Alon Alexander in an executive role and continuing to provide him with financial compensation and corporate resources, the Alexander Parents and Kent Security Services knowingly accepted the benefits of his connections while disregarding and/or consciously ignoring the substantial risk that those same resources were being used to facilitate a sex trafficking scheme. This knowing acceptance of financial and reputational benefits constitutes a participation in, and benefit from, the sex trafficking venture that foreseeably resulted in Plaintiff's assault.

112.    The Alexander Parents and Kent Security Services knew or should have known that the employment of and the salary paid to Defendant Alon Alexander, that both the Alexander Parents and Kent Security Services financially and reputationally benefitted from, would be used to entice and recruit Plaintiff to then force her to engage in commercial sex acts, as defined by 18 U.S.C. § 1591(e)(3).

113.     As a direct and proximate result of the Basement Miami Defendants' actions, Plaintiff has sustained, and will continue to sustain, monetary damages and/or economic harm, physical injury, pain and suffering, and serious psychological and emotional distress.

**FOURTH CAUSE OF ACTION**
**Sex Trafficking under 18 U.S.C. § 1591**
***Against Howard Lorber and Douglas Elliman (Douglas Elliman, Inc., and Douglas Elliman Realty, LLC)***

114.     Plaintiff repeats and realleges each and every allegation contained in all of the preceding paragraphs as if fully set forth herein.

115.     Douglas Elliman, at the direction of its chairman and Chief Executive Officer, Howard Lorber, directed, enabled, participated in, and/or knew or should have known that the Alexander Brothers were sex trafficking women, and advanced or profited from their sex trafficking of women. Howard Lorber and Douglas Elliman provided benefits, goods, services, and/or promises of the same, which were then used to lure women into this sex trafficking ring, in violation of 18 U.S.C. § 1591(a)(2), reaping a benefit in return.

116.     Howard Lorber and Douglas Elliman participated in the venture by continuing to employ Defendant Oren Alexander despite numerous reports from female real estate agents, who were also employed by Douglas Elliman, that Defendant Oren Alexander, along with his brothers, sexually assaulted and/or raped them. Multiple real estate professionals reported that they either had personally told executives at Douglas Elliman about assaults by the Alexander Brothers or had been told about said assaults by company executives. Despite this, Howard Lorber and Douglas Elliman continued to provide Defendant Oren Alexander with financial resources that he, along with his brothers, then used to contact, recruit, and entice women to sexually assault and rape, by virtue of his wealth and social status, something he gained as a result of his employment at Douglas Elliman.

117.    Douglas Elliman and Howard Lorber, as Chairman and CEO, knowingly and intentionally benefited financially from their participation in the sex-trafficking venture. Defendant Oren Alexander, along with his brother Tal Alexander, were notable and successful real estate agents in the ultra-luxury market. The Alexander Brothers generated substantial income for the company, thus elevating them to a high social class, and retaining them was of great financial and reputational benefit. Howard Lorber and Douglas Elliman continued to promote Defendant Oren Alexander, creating an environment where he generated more money for the company based upon his access to the ultra-luxury market, along with elevating his notability among elite social circles.

118.    By retaining Defendant Oren Alexander as an ultra-luxury real estate agent generating enormous income, continuing to provide him with financial compensation and corporate resources, Douglas Elliman and Howard Lorber knowingly accepted the benefits of his social connections and the income he generated while disregarding and/or consciously ignoring the substantial risk that those same resources were being used to facilitate a sex trafficking scheme. This knowing acceptance of financial and reputational benefits constitutes a participation in, and benefit from, the sex trafficking venture that foreseeably resulted in Plaintiff's assault.

119.    Douglas Elliman and Howard Lorber knew or should have known that the employment of and the salary paid to Defendant Oren Alexander, which both Howard Lorber and Douglas Elliman financially and reputationally benefited from, would be used to entice and recruit Plaintiff to then force her to engage in commercial sex acts, as defined by 18 U.S.C. § 1591(e)(3).

120.     As a direct and proximate result of Defendants Howard Lorber and Douglas Elliman's actions, Plaintiff has sustained, and will continue to sustain, monetary damages and/or economic harm, physical injury, pain and suffering, and serious psychological and emotional distress.

**FIFTH CAUSE OF ACTION**
**Human Tracking under Florida Law**
*Against Alon and Oren Alexander*

121.     Plaintiff repeats and realleges each and every allegation contained in all of the preceding paragraphs as if fully set forth herein.

122.     Plaintiff is a victim of trafficking within the meaning of Fla. Stat. § 787.06 and is therefore entitled to bring an action under Fla. Stat. § 787.061.

123.     Defendants' acts and omissions, taken separately and/or together, as outlined above, constitute a violation of Fla. Stat. § 787.06. Specifically, Defendants Oren and Alon Alexander perpetrated human trafficking of Plaintiff by transporting, soliciting, recruiting, and enticing Plaintiff for the purpose of exploitation. The Alexander Brothers used coercion for commercial sexual activity of Plaintiff, as defined in Fla. Stat. §§ 787.06(2)(a) and 787.06(2)(b) respectively, by restraining and isolating Plaintiff in their condo; enticing and/or luring Plaintiff by fraud or deceit; and providing a controlled substance to Plaintiff for the purpose of exploiting Plaintiff.

124.     As a direct and proximate result of Defendants' acts or omissions, Plaintiff has sustained and will continue to sustain physical injury, pain and suffering, and serious psychological and emotional distress.

125.      Defendants Alon and Oren Alexander used a private investigator and threats about Plaintiff's past to coerce Plaintiff into remaining silent, preventing Plaintiff from asserting her rights within the statutorily prescribed period. Further, Plaintiff was unaware of the breadth

of Defendants' conduct and the sex trafficking ring they established until Defendants were arrested in December 2024.

126.     Pursuant to Fla. Stat. § 95.11(8), the suspension of the statute of limitations based upon discovery by the injured party of both the injury and the causal relationship between the injury and the abuse applies to actions brought pursuant to Fla. Stat. § 787.061.

127.     The running of the statute of limitations may be suspended as Plaintiff could not have reasonably discovered the cause of action due to the Alexander Brothers' continuous concealment of their actions.

<u>**SIXTH CAUSE OF ACTION**</u>
<u>**Human Tracking under Florida Law**</u>
***Against Basement Miami Defendants (Marriott International, Inc., The Miami Beach EDITION, and Basement Miami)***

128.     Plaintiff repeats and realleges each and every allegation contained in all of the preceding paragraphs as if fully set forth herein.

129.     Defendants' acts and omissions, taken separately and/or together, as outlined above, constitute a violation of Fla. Stat. § 787.06.

130.     Basement Miami Defendants benefited financially from their participation in the Alexander Brothers' sex-trafficking venture by receiving substantial revenue from the Alexander Brothers' repeated payment for VIP table reservations and bottle service.

131.     Basement Miami Defendants knew or were in reckless disregard of the fact that the financial benefit they received from the money spent by the Alexander Brothers at the venue was used to coerce women to engage in commercial sex activity, as defined by Fla. Stat. § 787.06(2)(b).

132. As a direct and proximate result of Defendants' acts or omissions, Plaintiff has sustained and will continue to sustain physical injury, pain and suffering, and serious psychological and emotional distress.

133. Defendants Alon and Oren Alexander used a private investigator and threats about Plaintiff's past to coerce Plaintiff into remaining silent, preventing Plaintiff from asserting her rights within the statutorily prescribed period. Further, Plaintiff was unaware of the breadth of Defendants' conduct and the sex trafficking ring they established until Defendants were arrested in December 2024.

134. Pursuant to Fla Stat. § 95.11(8), the suspension of the statute of limitations based upon discovery by the injured party of both the injury and the causal relationship between the injury and the abuse applies to actions brought pursuant to Fla. Stat. § 787.061.

135. The running of the statute of limitations may be suspended as Plaintiff could not have reasonably discovered the cause of action due to the Alexander Brothers' continuous concealment of their actions.

**SEVENTH CAUSE OF ACTION**
**Human Tracking under Florida Law**
*Against the Alexander Parents (Shlomo Alexander and Orly Alexander) and Kent Security Services*

136. Plaintiff repeats and realleges each and every allegation contained in all of the preceding paragraphs as if fully set forth herein.

137. Defendants' acts and omissions, taken separately and/or together, as outlined above, constitute a violation of Fla. Stat. § 787.06.

138. The Alexander Parents, and consequently, Kent Security Services benefited financially and reputationally from their participation in the Alexander Brothers' sex-trafficking venture by continuing to employ Defendant Alon Alexander as an executive at Kent Security

Services, who maintained a close relationship with his ultra-luxury real estate agent brothers with connections to high profile circles. A tangible benefit was conferred upon the Alexander Parents and Kent Security Services in the form of increased credibility, contacts, and revenue opportunities from those connections.

139.    The Alexander Parents and Kent Security Services knew or were in reckless disregard of the fact that the financial and reputational benefit they received from the continued employment of Defendant Alon Alexander allowed the Alexander Brothers to coerce women to engage in commercial sex activity, as defined by Fla. Stat. § 787.06(2)(b).

140.    As a direct and proximate result of the Alexander Parents and Kent Security Services' actions, Plaintiff has sustained, and will continue to sustain, monetary damages and/or economic harm, physical injury, pain and suffering, and serious psychological and emotional distress.

141.    Defendants Alon and Oren Alexander used a private investigator and threats about Plaintiff's past to coerce Plaintiff into remaining silent, preventing Plaintiff from asserting her rights within the statutorily prescribed period. Further, Plaintiff was unaware of the breadth of Defendants' conduct and the sex trafficking ring they established until Defendants were arrested in December 2024.

142.    Pursuant to Fla Stat. § 95.11(8), the suspension of the statute of limitations based upon discovery by the injured party of both the injury and the causal relationship between the injury and the abuse applies to actions brought pursuant to Fla. Stat. § 787.061.

143.    The running of the statute of limitations may be suspended as Plaintiff could not have reasonably discovered the cause of action due to the Alexander Brothers' continuous concealment of their actions.

### EIGHTH CAUSE OF ACTION
### Human Trafficking under Florida Law
### Against Howard Lorber and Douglas Elliman *(Douglas Elliman, Inc., and Douglas Elliman Realty, LLC)*

144.    Plaintiff repeats and realleges each and every allegation contained in all of the preceding paragraphs as if fully set forth herein.

145.    Defendants' acts and omissions, taken separately and/or together, as outlined above, constitute a violation of Fla. Stat. § 787.06.

146.    Howard Lorber and Douglas Elliman benefited financially and reputationally from their participation in the Alexander Brothers' sex-trafficking venture by continuing to employ Defendant Oren Alexander as a notable and successful real estate agent in the ultra-luxury market, generating high-profile connections and substantial income for the company.

147.    Howard Lorber and Douglas Elliman knew or were in reckless disregard of the fact that the financial and reputational benefit they received from the continued employment of Defendant Oren Alexander allowed the Alexander Brothers to coerce women to engage in commercial sex activity, as defined by Fla. Stat. § 787.06(2)(b).

148.    As a direct and proximate result of Defendants Howard Lorber and Douglas Elliman's actions, Plaintiff has sustained, and will continue to sustain, monetary damages and/or economic harm, physical injury, pain and suffering, and serious psychological and emotional distress.

149.    Defendants Alon and Oren Alexander used a private investigator and threats about Plaintiff's past to coerce Plaintiff into remaining silent, preventing Plaintiff from asserting her rights within the statutorily prescribed period. Further, Plaintiff was unaware of the breadth of Defendants' conduct and the sex trafficking ring they established until Defendants were arrested in December 2024.

150.    Pursuant to Fla Stat. § 95.11(8), the suspension of the statute of limitations based upon discovery by the injured party of both the injury and the causal relationship between the injury and the abuse applies to actions brought pursuant to Fla. Stat. § 787.061.

151.    The running of the statute of limitations may be suspended as Plaintiff could not have reasonably discovered the cause of action due to the Alexander Brothers' continuous concealment of their actions.

## PRAYER FOR RELIEF ON CLAIMS

WHEREFORE, Plaintiff prays that this Court enter judgment against Defendants herein and any other Defendants who may later by added to this action as follows:

1.    For a money judgment representing compensatory damages, including but not limited to: consequential damages, lost wages, non-economic damages, and all other sums of money, together with interest on these amounts, according to proof;

2.    For a money judgment for mental pain and anguish and severe emotional distress, according to proof;

3.    For restitution;

4.    For disgorgement of all sums unjustly obtained from Plaintiff or insured to the benefit of Defendants;

5.    For civil penalties;

6.    For punitive and exemplary damages, according to proof;

7.    For attorneys' fees and costs;

8.    For prejudgment and post-judgment interest; and

9.    For such other and further relief as the Court may deem just and proper.

## **JURY DEMAND**

Plaintiff demands a trial by jury on all issues triable of right by jury.


DATED: January 22, 2026             Respectfully submitted,

                                    **THE BLOOM FIRM**

                                    By: _____
                                    Arick Fudali
                                    Attorney for Plaintiff, Tiffany M. Rodriguez